# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: SHARON C. WARD.<br><br>CREDIT SOLUTIONS,<br><br>                    Appellant. | Case No. 14-CV-882-JPS |
| In re: CANDACE R. SIMPSON.<br><br>CREDIT SOLUTIONS, S.C.,<br><br>                    Appellant. | Case No. 14-CV-883-JPS<br><br>ORDER |

Credit Solutions, S.C. ("Credit Solutions"), the appellant and sole party in these two separate bankruptcy appeals, served as counsel for the debtors in two separate Chapter 13 actions before Bankruptcy Judge Michael Halfenger. *See In re Ward*, 511 B.R. 909, 911 (Bankr. E.D. Wis. 2014).[1] Judge Halfenger eventually dismissed both bankruptcy cases on motion by the trustee, because the debtors in both cases failed to make pre-confirmation payments, as 11 U.S.C. § 1326(a)(1) requires. *Id.*

Prior to the dismissal of the cases, though, Credit Solutions filed fee applications with the Bankruptcy Court. *Id.* This presented a strange situation. Generally, the Bankruptcy Court must order that the trustee return all of a debtor's funds to the debtor whenever a bankruptcy case is dismissed prior to confirmation. *See id.* (citing 11 U.S.C. § 1362(a)(2); 11 U.S.C.

---

[1]The Court addresses these two separate appeals together, because Credit Solutions is the only party in each and the appeals present practically identical issues. Judge Halfenger recognized this, and issued a single order addressing motions for reconsideration in the separate bankruptcy cases before him. *See In re Ward*, 511 B.R. at 911.

§ 349(b)(3)). Predictably, Credit Solutions did not favor this approach because it would place Credit Solutions in a much more tenuous position: receipt of its fees for completed work would hinge entirely on the debtors' respective decisions to pay or not pay those fees from the funds returned to them by the trustee. *See In re Ward*, 511 B.R. at 911. "In effect," Credit Solutions' fee applications were an "effort to change the [Bankruptcy] Code's default rule that a trustee must return 'to the debtor' payments held by the trustee when a case is dismissed before confirmation." *Id.* (citing 11 U.S.C. § 1362(a)(2); 11 U.S.C. § 349(b)(3)).

Credit Solutions filed those fee applications near "the end of the objection period on the dismissal motions," meaning that "counsel's applications were not ripe for decision when the cases were dismissed." *In re Ward*, 511 B.R. at 911. Accordingly, Judge Halfenger dismissed both cases without taking action on the fee applications. *Id.*

Thereafter, Judge Halfenger held hearings on the fee applications, ultimately denying them.[2] *Id.* In spite of the fact that the petitions had been filed prior to dismissal of the cases and that there were no objections to the fee applications, Judge Halfenger determined that the plain language of 11 U.S.C. § 1326(a)(2) required that the trustee return the funds to the debtors and that 11 U.S.C. § 349(b)(3) revested the right to those funds in the debtors. *In re Ward*, 511 B.R. at 911–12.

Credit Solutions then moved for reconsideration under Federal Rules of Civil Procedure 59 and 60 and for a stay of the return of funds pending

---

[2]He held separate hearings in the cases, but reached practically identical conclusions, *In re Ward*, 511 B.R. at 911–12, so the Court treats them as one.

appeal. *In re Ward*, 511 B.R. at 911–12, 914 (citing Fed. R. Civ. P. 59, 60; Fed. R. Bankr. P. 8005, 9023, 9024)).

Judge Halfenger denied the reconsideration portion of those motions at a May 27, 2014 hearing.[3] *In re Ward*, 511 B.R. at 912. He found that Rule 60 could not afford relief on the basis of a misapplication of the law. *Id.* (citing *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270–71 (2010)). He also held that Rule 59 did not afford relief, because there was not a manifest error of law: while certain case law supported Credit Solutions' position—although Credit Solutions had not raised some of that authority until the motion for reconsideration—there was also case law to the contrary. *In re Ward*, 511 B.R. at 912–913 (citing a variety of cases, some supporting Credit Solutions' position and some opposing it). Judge Halfenger also pointed out that Credit Solutions could have, but did not, filed their applications earlier, requested an earlier ruling on them, or sought to stay dismissal pending decision on the applications. *Id.*, at 913. The fact that they did not take those courses militated against a finding of manifest injustice. *Id.*, at 913–14 (citing *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013); *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996)). Last, he noted that it was unclear whether Credit Solutions had actually provided any benefit to the debtor, as required under 11 U.S.C. § 330(a)(3–4), seeing as the debtors' plans were not confirmed. *In re Ward*, 511 B.R. at 914.

Though he denied the motions for reconsideration, Judge Halfenger *did* issue a stay regarding the disbursement of funds. *See, e.g.*, *id.*, at 922. He

---

[3]Judge Halfenger described the reasons for this denial in a later-issued order, which seems to have expanded upon the reasoning provided at the hearings. *See In re Ward*, 511 B.R. at 911–14. The Court has nonetheless cited to that order, as it provides the best overview of the posture of the case.

found that Credit Solutions has some chance of prevailing on appeal and that the balance of potential harms weighed in favor of staying disbursement. *Id.*, at 921 (citations omitted).

Credit Solutions appealed both cases, and those appeals are now before the Court. (*See, e.g.*, Case No. 14-CV-882, Docket #1; Case No. 14-CV-883, Docket #1). Credit Solutions is the only party in either appeal,[4] and briefing is complete. (*See, e.g.*, Case No. 14-CV-882, Docket #1, #3; Case No. 14-CV-883, Docket #1, #3).

1.  STANDARD OF REVIEW

In reviewing this appeal, the Court must first address the standard of review that it must apply. Judge Halfenger identified two procedural irregularities that could potentially affect that standard. *See In re Ward*, 511 B.R. at 914–916.

*First*, he pointed out that Credit Solutions' notice of appeal related only to the denials of reconsideration. *Id.* (citing notices of appeals in bankruptcy cases). That being the situation, these appeals are arguably limited to Judge Halfenger's denials of reconsideration. *See In re Ward*, 511 B.R. at 914–15 (citing Fed. R. Bankr. P. 8001(a); Fed. R. App. P. 3(c); *Fadayiro v. Ameriquest Mortg. Co.*, 371 F.3d 920, 921–22 (7th Cir. 2004); *United States v.*

---

[4]The Court pauses to note that the debtors did not appear or file briefs in these appeals. Perhaps they determined that they did not wish to oppose Credit Solutions' position (but then why would they not agree to simply pay Credit Solutions out of the reimbursed funds). Perhaps more likely, they were never advised of this appeal or its potential impact on them. Credit Solutions is taking a position that may be adverse to the debtors, and may therefore have required withdrawal as counsel. The Court does not rule that is the case—that may be an issue for disciplinary authorities to resolve if there is a dispute—but the Court would hope that Credit Solutions took proper steps to advise the debtors and shield itself from ethical violations.

*Arkison*, 34 F.3d 756, 761 (9th Cir. 1994)). And, if that were the case, then the Court would be constrained to review the denial of the motions for reconsideration using an abuse of discretion standard, which—the Court agrees with Judge Halfenger—would make it impossible for Credit Solutions to prevail on appeal, in light of the lack of controlling authority and disagreement amongst other courts on the underlying issue. *See In re Ward*, 511 B.R. at 915.

That is likely the case, here. In *Fadayiro*, Judge Posner stated that it was likely that Fed. R. Bankr. P. requires an appellant to explicitly list any order being appealed. *See Fadayiro*, 371 F.3d at 921–22. The Court finds that persuasive and this, alone, would be a basis to affirm Judge Halfenger.

On the other hand, *Fadayiro* made that statement in *dicta* and is contrary to other circuits' law. The firmest guidance on the topic has come from the Ninth Circuit, which has held that appellants do not need to specifically mention in their notice of appeal every order that they intend to appeal. *See, e.g.*, *In re Dudly*, 249 F.3d 1170, 1174 (9th Cir. 2001) (citing *Arkison*, 34 F.3d at 761). The Third Circuit has also allowed jurisdiction over appeals of unspecified orders where there is a connection between the specified and unspecified orders, the appellant intended to appeal the unspecified order, and the appellee has not been prejudiced. *See, e.g.*, *In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 334 (3d Cir. 2004) (citing *Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252, 1254 (3d Cir. 1977)). All of those elements are present in this case.

Accordingly, in light of the tenuous nature of *Fadayiro*'s guidance, which conflicts with the law of other circuits, the Court will address the issues, as though they are not limited to the motions for reconsideration.

*Second*, Judge Halfenger noted that Credit Solutions waited until it filed its motions for reconsideration to raise any substantive argument on the issue that it asserts on appeal, and, therefore, may have forfeited or waived such argument. *In re Ward*, 511 B.R. at 915–16 (citing *Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009); *Pond v. Michelin N. Am. Inc.*, 183 F.3d 592, 597 (7th Cir. 1999); *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012)).

On this point, the Court departs from Judge Halfenger's analysis. As Judge Halfenger acknowledged, the Seventh Circuit has treated forfeiture of statutory interpretation issues fairly liberally, allowing parties to raise those issues on appeal, even if not previously presented. *In re Ward*, 511 B.R. at 916 (citing *Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746, 749–50 (7th Cir. 1993)). In this case, Credit Solutions raised its argument generally at the first hearing on the petition for attorney fees. At the time, Credit Solutions was unprepared; this lack of preparation was arguably justifiable, because no one had objected to Credit Solutions' fee petition, and so Credit Solutions may not have anticipated a substantive hearing on the issue. (*See, e.g.*, Case No. 14-CV-882, Docket #3, 3; Case No. 14-CV-883, Docket #3, 3). When Judge Halfenger ultimately denied the fee petition, Credit Solutions diligently filed a more substantive motion for reconsideration.

For these reasons, the Court finds it best to determine that Credit Solutions did not forfeit or waive its arguments.

Having made these determinations, the Court ultimately concludes that it must review Judge Halfenger's conclusions of law *de novo. See, e.g.*, *In re Berman*, 629 F.3d 761, 765–66 (7th Cir. 2011) (citing *Ojeda v. Goldberg*, 599 F.3d 712, 716 (7th Cir. 2010); *In re Frain*, 230 F.3d 1014, 1019 (7th Cir. 2000); *In re Scott*, 172 F.3d 959, 966 (7th Cir. 1999)).

2.  ANALYSIS

There is only one issue to determine in this case: whether bankruptcy judges "can consider requests to allow an administrative expense claim after a case is dismissed." *In re Ward*, 511 B.R. at 912. If so, then the Court must remand this case to Judge Halfenger to determine whether Credit Solutions is entitled to receive attorneys' fees as an administrative expense claim. If not, then the Court must affirm Judge Halfenger's decision.

As Judge Halfenger recognized, there is a split of authority on the issue. *Id.*, at 912–13 (citing *In re Garris*, 496 B.R. 343, 354–55 (Bankr. S.D.N.Y. 2013) (post-dismissal consideration allowed); *In re Matthews*, No. 12-CV-414, 2012 WL 3263599, at *5 (E.D. Pa. Aug. 9, 2012) (post-dismissal consideration allowed; applying *In re Lewis*, 346 B.R. 89, 103–105 (Bankr. E.D. Pa. 2006), and vacating Bankruptcy Judge's finding that it lacked jurisdiction to hear post-dismissal fee petition); *In re Lewis*, 346 B.R. at 103–05 (post-dismissal consideration allowed); *In re Kent Funding Corp.*, 290 B.R. 471, 478 (Bankr. E.D.N.Y. 2003) (post-dismissal consideration allowed); *Iannini v. Winnecour*, 487 B.R. 434, 443 (W.D. Pa. 2012) (post-dismissal consideration not allowed); *In re Ragland*, No. 05-18142, 2006 WL 1997416, at *5–6 (Bankr. E.D. Pa. May 25, 2006) (post-dismissal consideration not allowed).

2.1  The Statutory Scheme

Reading the statutes on this issue according to their plain terms, the Court comes away firmly believing that the statutes simply cannot be read in harmony with one another. On one hand—favoring Credit Solutions' position—is the text of 11 U.S.C. § 1326 and its related statutes. 11 U.S.C. § 1326 provides that, when "a plan is not confirmed, the trustee shall return" the *res* of the bankruptcy estate "to the debtor, after deducting any unpaid

claim allowed under [11 U.S.C. §] 503(b)." 11 U.S.C. § 503(b)(2), in turn, allows for payment of attorneys' fees if they are found to be allowed administrative expenses under 11 U.S.C. § 330(a)(1)(A). This seems to indicate that the trustee should return the bankruptcy estate to the debtor *only after* paying attorneys' fees (as approved under 11 U.S.C. § 330(a)(4)(B)). On the other hand—weighing heavily against Credit Solutions' position—is the text of 11 U.S.C. § 349(b)(3). That statute states that "[u]nless the court, for cause, orders otherwise, a dismissal of a case…revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case." 11 U.S.C. § 349(b)(3). In other words, the dismissal itself causes the estate to immediately revest in the pre-bankruptcy owner—in this case, the debtor. The trustee would have to convey the estate back immediately, without providing for attorneys' fees.

Courts have landed all over the map in attempting to construe these phrases.

*In re Lewis* held that 11 U.S.C. § 1362(a)(2) would apply only in cases where the bankruptcy court denied confirmation but did not dismiss the case (and thus would not apply in cases like *In re Lewis* or this one, in which the bankruptcy case was dismissed). *See* 346 B.R. at 111. Thus, it relied on 11 U.S.C. § 349(b)(3), instead, holding that 11 U.S.C. § 349(b)(3) should apply. *Id.* at 110–11. In spite of some problems, 11 U.S.C. § 349(b)(3) offered "flexibility" to the Court, which could use "the 'for cause' provision in § 349" to consider fee applications post-dismissal. *Id.*

The *In re Garris* court, after closely considering *In re Lewis*' holding, reached precisely the opposite conclusion. *In re Garris*, 496 B.R. at 352–53. *In re Garris* began by noting the issues with *In re Lewis*' holding. *In re Garris*, 496

B.R. at 350–51. Perhaps most important among those issues is the fact that, by its plain terms, 11 U.S.C. § 349(b)(3) applies only to the *pre*-petition estate, having no effect on *post*-petition plan payments. *In re Garris*, 496 B.R. at 350 (discussing the recognition of the court in *In re Lewis*, 346 B.R. at 108–109, that 11 U.S.C. § 349(b)(3)'s terms are difficult to apply to post-petition payments). *In re Garris* went on to squarely disagree with *In re Lewis*' finding that 11 U.S.C. § 1362(a)(2) could only apply to non-dismissed cases. *In re Garris*, 496 B.R. at 352–53. It held that the language of 11 U.S.C. § 1362(a)(2) was clear and would apply to dismissed cases, such as *In re Lewis* and the case at hand: "The language in the third paragraph of section 1326(a)(2) was likely broadened to encompass dismissal as well as denial of confirmation, as the two often occur together." *In re Garris*, 496 B.R. at 353. *In re Garris* found that this reading could also square with 11 U.S.C. § 349(b)(3), insofar as 11 U.S.C. § 349(b)(3) should be read to apply to the *pre*-petition estate while 11 U.S.C. § 1362(a)(2) should be read to apply to *post*-petition plan payments. *See In re Garris*, 496 B.R. at 353 ("This reading of section 1326(a)(2) is consistent with section 349(b)(3). Plan payments typically come from postpetition earnings; there is no party vested in the property as of the petition date. *See Lewis*, 346 B.R. at 107. Section 1326(a)(2) supplements section 349(b)(3) in dismissed cases to deal with this different type of property.").

*In re Lewis* and *In re Garris*, however, do have one common trait: both find that the bankruptcy court can consider attorneys' fee petitions post-dismissal. *See In re Lewis*, 346 B.R. at 110–14; *In re Garris*, 496 B.R. at 354–55. The nature of the post-dismissal review differed in minor ways. *In re Lewis* found it appropriate to review the petition under 11 U.S.C. § 349(b)'s "for cause" standard, finding jurisdiction existed and a fee award was

appropriate where the petition had been filed pre-dismissal (but concluding otherwise where the petition was filed post-dismissal). 346 B.R. at 111–14. *In re Garris*, on the other hand, simply found that bankruptcy courts *can* retain ancillary jurisdiction over fee requests in spite of dismissal. 496 B.R. at 354 (citing *In re Parklex Associates, Inc.*, 435 B.R. 195, 208 (Bankr. S.D.N.Y. 2010) (itself citing *In re Elias*, 188 F.3d 1160, 1164 (9th Cir. 1999), among other cases, for the proposition that bankruptcy courts retain post-dismissal jurisdiction to dispose of ancillary matters such as fee petitions); *In re Fox*, 140 B.R. 761, 764 (Bankr. D.S.D. 1992) (noting that "[n]o Code provision moots fee applications filed after a case is dismissed," and that some bankruptcy courts employ local rules to avoid the "'case dismissed-application moot' objection."); *In re Brown*, 371 B.R. 486, 494 (Bankr. N.D. Okla. 2007) ("[t]he Court's jurisdiction to review such fees is not dependent on whether the status of the case stands as open, closed, pending, or dismissed."); *In re Kent Funding Corp.*, 290 B.R. 471, 477–78 (Bankr. E.D.N.Y. 2003) (declining to hear post-dismissal fee dispute, despite having discretion to exercise ancillary jurisdiction).

In the end, the Court finds *In re Garris*' approach to be most sound. The Court finds that case's review of the statutory language to be more persuasive than the reasoning in *In re Lewis*. 11 U.S.C. § 1326(a)(2) applies, by its plain terms, applies much more closely to this case than 11 U.S.C. § 349(b)(3), which would apply only to the pre-petition estate. In turn, 11 U.S.C. § 1326(a)(2) calls for the trustee to disburse the funds after deducting *allowed* administrative expenses, such as attorneys' fees. Because Judge Halfenger did not allow those expenses prior to dismissal, the trustee should have disbursed the funds to the debtor without deducting attorneys' fees.

This, however, leaves open the question of whether Judge Halfenger could have or should have retained jurisdiction over the issue to determine whether the fees were allowed administrative expenses.

2.2     Exercise of Jurisdiction

So, the Court still must determine whether Judge Halfenger erred in finding that he could not exercise jurisdiction. Perhaps he did, but—even if so—it was harmless error.

The Court says that "perhaps" Judge Halfenger erred, because the law on retained jurisdiction is unclear. There are four different retained-jurisdiction regimes that the Court has identified:

(1)     Ancillary Jurisdiction. There is some general acceptance of the proposition that a bankruptcy court can retain at least ancillary post-dismissal jurisdiction over fee petitions. *See, e.g.*, *In re Garris*, 496 B.R. at 354 (collecting a number of cases allowing ancillary jurisdiction); *In re Elias*, 188 F.3d at 1164.

(2)     Ancillary Jurisdiction only for Reasonableness Determination. This position limits ancillary jurisdiction to determinations of reasonableness, *see, e.g.*, *Dery v. Cumberland Cas. & Surety Co.*, 468 F.3d 326, 330–31 (6th Cir. 2006); *Tsafaroff v. Taylor*, 884 F.2d 478, 481 (9th Cir. 1989); *Dahlquist v. First Nat'l Bank in Sioux City*, 751 F.2d 295, 298 (8th Cir.).

(3)     Express Grant. Other courts limit jurisdiction further, finding that, absent a decision by the bankruptcy court to retain jurisdiction, the bankruptcy court has no post-dismissal jurisdiction over fee petitions. *See, e.g.*, *In re Westgate Nursing Homes, Inc.*, 518 B.R. 520 (Bankr. W.D.N.Y. 2014) (noting that 11 U.S.C. § 349(b) causes the post-dismissal "disappearance" of the bankruptcy estate, leaving no "case or controversy" regarding attorneys' fees for a court to decide) (citing *Iannini v. Winnecour*, 487 B.R. 434, 438–39 (W.D. Pa. 2012); *In re Sweports, Ltd.*, 511 B.R. 522, 525 (Bankr. N.D. Ill. 2014); *In re Garnett*, 303 B.R. 274, 278 (E.D.N.Y. 2003)).

(4) Party Request. *In re Lewis* can be viewed as expanding the express-grant regime, allowing retained jurisdiction on the basis of a party request. 346 B.R. at 103 ("the *Lewis Motion*, which was considered at the dismissal hearing, functioned as a request that the court order that the dismissal not result in the automatic revesting of estate property in the Debtor and was denied by separate order," thus bifurcating the issues, and leaving open the fees issue).

Even if the Court were to adopt the position of the second or third regime, it would not mean that Judge Halfenger erred. Frankly, neither situation applies, here: there was no reasonableness determination left nor did Judge Halfenger expressly grant retained jurisdiction. Meanwhile, the Court finds that the fourth regime is inconsistent with the plain language of the statutes. That is, upon dismissal of the case—absent an *express* retention of jurisdiction—when there is no bankruptcy estate remaining, 11 U.S.C. § 349(b)(3), and no finding of allowed expenses, 11 U.S.C. § 1326(a)(2), there is simply no question left to resolve and a party request or implicit court action based on that request does not create jurisdiction. *See, e.g.*, *In re Westgate Nursing Homes*, 518 B.R. at 256–57 ("[w]here jurisdiction is not expressly retained, the court 'presumptively lacks jurisdiction over the issue'") (quoting *Iannini*, 587 B.R. at 439; citing *In re Ragland*, 2006 WL 1997416, at *6).

That leaves the issue of ancillary jurisdiction. Indeed, if the Court were to find that Judge Halfenger had the ability to exercise ancillary jurisdiction, then it should find that he erred, because he did not believe that he had any authority to retain jurisdiction. Ultimately, the Court need not decide whether he could have retained ancillary jurisdiction, though, because—even if he had authority to do so—he has made clear that he would not have

exercised such authority, making any legal misunderstanding harmless. The exercise of ancillary jurisdiction is, of course, left to the discretion of the judge. *See, e.g.*, *In re Elias*, 188 F.3d at 1164. And, seeing as Judge Halfenger flatly rejected the exercise of ancillary jurisdiction, *In re Ward*, 511 B.R. at 920 ("it appears inappropriate to assert ancillary jurisdiction to act on fee applications after dismissal, as counsel proposes in these cases, even if the court has the authority to do so") (citing *In re Ragland*, 2006 WL 1997416, at *8),[5] it is clear that he would not have taken that step, even if had found that it was an option. In other words, even if Judge Halfenger erred in not finding ancillary jurisdiction to be an appropriate option in rendering his initial rulings,[6] that error was ultimately harmless and does not form the basis for reversal on appeal. He had the discretion to make that decision, and the Court does not find that he abused that discretion.

Finally, the Court points out that this is the best outcome in terms of serving the goals of the statutes and swift administration of bankruptcy cases. As to the first point, Judge Halfenger correctly pointed out that "the

---

[5]The Court recognizes that Judge Halfenger issued this order *after* Credit Solutions had filed its notice of appeal, which is unorthodox. Nonetheless, even if the Court were to ignore the order, there is ample evidence in the transcript of Judge Halfenger's hearing that he would not have exercised ancillary jurisdiction (*See, e.g.*, Case No. 14-CV-882, Docket #1, Ex. 2, 68–69, 73 (internal transcript pages 12–13, 17); Case No. 14-CV-882, Docket #1, Ex. 2, 60–61, 65 (internal transcript pages 12–13, 17)).

[6]And, again, the Court does not necessarily find that to be the case. The case law on this topic is diverse, and the Court does not ultimately need to reach a decision on the issue to reach a disposition in this case. Moreover, Judge Halfenger explicitly considered authority on the issue and found that ancillary jurisdiction should not be exercised. (*See, e.g.*, Case No. 14-CV-882, Docket #1, Ex. 2, 68–69, 73 (internal transcript pages 12–13, 17); Case No. 14-CV-882, Docket #1, Ex. 2, 60–61, 65 (internal transcript pages 12–13, 17)).

general purpose of § 349(b)…is to 'restore all property rights, as far as practicable, to the positions they occupied at the commencement of a case that was dismissed.'" (*In re Ward*, 511 B.R. at 918 (quoting 3 Collier on Bankruptcy, ¶ 349.03, at 349–12 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014)). This approach certainly accomplishes that goal. Perhaps attorneys will have to reach fee agreements with clients or even obtain a judgment against former clients, but certainly all of the property rights are restored to their original owner: the client. As to the second point—the swift administration of justice—the Court notes that this outcome could allow for bankruptcy judges to exercise ancillary jurisdiction , *see In re Elias*, 188 F.3d at 1164, *In re Garris*, 496 B.R. at 354, or expressly retain jurisdiction, *see In re Westgate Nursing Homes*, 518 B.R. 520; *In re Sweports, Ltd.*, 511 B.R. at 525, if they find such authority to be persuasive and wish to exercise their authority in appropriate cases. That flexibility, as opposed to the (ultimately unclear) approach of *Lewis* best leaves bankruptcy judges to act upon these cases as they see fit.

3. CONCLUSION

For all of these reasons, the Court is obliged to affirm Judge Halfenger's decisions on these cases. Even if the matter is before the Court on Judge Halfenger's initial rulings, rather than his denials of Credit Solutions' motions for reconsideration, there still is no basis to reverse. Under the statutory scheme and principles of jurisdiction, Judge Halfenger was correct that he did not have jurisdiction to act on Credit Solutions' fee petition; perhaps he *could* have exercised ancillary jurisdiction, but he did not find that to be appropriate, and the Court can find no abuse of discretion in that decision.

Accordingly,

IT IS ORDERED that the decision of the bankruptcy court be and the same is hereby AFFIRMED; and

IT IS FURTHER ORDERED that this appeal be and the same is hereby DISMISSED.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 29th day of December, 2014.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge